GRELL and wife, Appellants, vs. GANSER and wife,
Respondents.*
*September 12—October 11, 1949.*

* Motion for rehearing denied, with $25 costs, on November 29, 1949.

382

*Lorin L. Kay* of Richland Center, for the appellants.

For the respondents there was a brief by *Vernon W. Thomson* and *Black & Fowell,* all of Richland Center, and oral argument by *Mr. Thomson* and *Mr. O. D. Black.*

FAIRCHILD, J.   The appellants brought this action claiming that they are the absolute and exclusive owners of all land connected with the southwest forty up to the line marked by an ancient fence which was built some distance north of an old but now abandoned highway.   Thus they claim that the land contribution to the old road came entirely from their premises, and, upon its abandonment, the land again became a part of their property.   The appellants are insisting that the fence was placed and exists as a boundary fence.

The respondents disavow that fence line and base their claim to ownership upon a line fixed by a survey of the lines of the section.

It must be conceded that a line can be established by acquiescence of the parties that may differ from a surveyed or true line.   *Wunnicke v. Dederich,* 160 Wis. 462, 152 N. W. 139, and cases cited therein; *Husted v. Willoughby,* 117 Mich. 56, 75 N. W. 279; *Pittsburgh & Lake Angeline Iron Co. v. Lake Superior Iron Co.* 118 Mich. 109, 76 N. W. 395; *White v. Peabody,* 106 Mich. 144, 64 N. W. 41; *Jones v. Pashby,* 67 Mich. 459, 35 N. W. 152; Anno. 69 A. L. R. 1491.   When long-continued possession of land up to a line has been ac-

quiesced in by all interested in the ownership of a contiguous piece of land, the boundary thereby established becomes the proper boundary irrespective of the operation of the principles which would otherwise fix and determine its location. A survey establishing a line between adjacent owners will not revive the right of an original owner against an established boundary since all that the survey does is to establish the line and not the title.

In Parker's Salmond, Jurisprudence (9th ed.), p. 405, sec. 106, it is said: "Possession, . . . is the objective realization of ownership. It is in *fact* what ownership is in *right*. Possession is the *de facto* exercise of a claim; ownership is the *de jure* recognition of one. . . . The two things tend mutually to coincide." See Readings on the History and System of the Common Law, Pound and Plucknett (3d ed.), p. 639. The doctrine has been followed by the courts not to disturb such long acquiescence in a boundary line. It seems to be the recognized policy of the law to encourage such settlements as a means of suppressing troublesome disputes. *Jones v. Pashby,* 67 Mich. 459, 35 N. W. 152; 8 Am. Jur., Boundaries, p. 802, sec. 80.

In his decision the trial court states : "So far as the evidence is concerned, it appears that the so-called north fence [the fence which appellants contend is the boundary line] has always been maintained by the Gansers [respondents] and their ancestors. . . . If the north fence was a partition fence, it in all probability would have been divided for maintenance purposes. There is no evidence that the owners of the south forty ever assisted in its building or maintenance." It is clear that the trial court considered the absence of evidence on this point of maintenance by the appellants important in determining if the fence was intended to be and was acquiesced in as a boundary.

However, it appears from a careful study of the record that the trial court was in error in holding that there was no evidence that the fence had been regarded as a boundary fence.

The predecessors in title of both parties were brothers: Anthony Weidenfelt owned one forty and Nicholas the other. The evidence is that they regarded the fence as the boundary and maintained it. It appears from a survey made in 1890 at the request of the common ancestor of the two brothers, Anthony and Nicholas, that there was an old fence starting from a common corner. It further appears that no owner of the north forty ever made use of the land south of the fence except by permission of the owner of the south forty and that the north fence was considered to mark the boundary. There is undisputed testimony of several witnesses that the fence was mutually maintained. There is evidence that Anthony Weidenfelt, respondents' predecessor in title, said before the commencement of this action, in fact, before any question that the fence was a boundary fence was raised and certainly at a time when there was nothing to show an intent to deceive or misrepresent, that he did not farm between the fence and the road because "That don't belong to me. That belongs to Nick." The record discloses that the findings of the trial court are against the great weight and preponderance of the evidence and the judgment must be reversed.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment recognizing the ancient fence as the boundary and for assessment of damages to the plaintiffs.